Luis Alberto GONZALEZ–
JULIO, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 91–70687.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1993.

Submission Vacated and Deferred
May 4, 1993.

Resubmitted Aug. 25, 1994.

Decided Sept. 1, 1994.

Robin Wurtzel, Honolulu, HI, for petitioner.

Ronald T. Oldenburg, Honolulu, HI, for amicus curiae.

Robert Keudall, Jr., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: GOODWIN, TANG and NOONAN, Circuit Judges.

TANG, Circuit Judge:

The Board of Immigration Appeals (BIA) summarily dismissed petitioner Luis Alberto Gonzalez–Julio's appeal of an Immigration Judge's deportation order on the basis that the appeal was untimely filed. Gonzalez–Julio petitions for review of the dismissal, joined by amicus curiae American Immigration Lawyers Association, Hawaii Chapter, claiming that the regulations for filing notices of appeal violated Gonzalez–Julio's due process rights. We agree and grant the petition.

**1.** Section 3.36(b) (1991) states:

> The notice of appeal of the decision shall be filed with the Office of the Immigration Judge having administrative control over the Record of Proceeding within ten (10) calendar days after service of the decision. Time will be 13 days if mailed. If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day.

Section 3.36(b) was redesignated as § 3.38(b) in 1992. *See* 57 Fed.Reg. 11568, 11570 (April 6, 1992).

**2.** Section 242.21(a) (1991) states:

## BACKGROUND

Gonzalez–Julio, a citizen of Bolivia, entered the United States in 1983 as a lawful permanent resident alien. In 1986, he was convicted in the State of Hawaii of promoting a dangerous drug and sentenced to 20 years incarceration. The Immigration and Naturalization Service (INS) began deportation proceedings on August 10, 1988, charging Gonzalez–Julio with deportability as an alien who had been convicted of a controlled substance violation under § 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11).

At a March 24, 1989 hearing in Honolulu before an Immigration Judge, Gonzalez–Julio challenged deportability on the basis that he had suffered prejudice from the delay in initiating the deportation hearings and because the INS had failed to provide full discovery. The Immigration Judge rejected his claims, and found him to be ineligible for any relief from deportation.

At this hearing, Gonzalez–Julio was told that an appeal must be received in the Office of the Immigration Judge (the "Office") no later than the close of business on April 3, 1989. The Office is located in San Diego, California. Gonzalez–Julio executed a notice of appeal (Form I–290A) dated March 31, 1989. The certificate of service to the INS in Honolulu was also dated March 31, and the petitioner's attorney represents that it was mailed on that date. The appeal was filed by the Office on April 7, 1989.

On November 7, 1991, two-and-one-half years after the appeal was filed, the BIA dismissed the appeal as untimely under 8 C.F.R. § 3.36(b) [1] and 242.21(a) [2] (1991).

> Pursuant to part 3 of this chapter an appeal shall lie from a decision of a special inquiry officer under this part to the Board of Immigration Appeals. An appeal shall be taken within 10 days after the mailing of a written decision, or the stating of an oral decision, or the service of a summary decision on Form I–38 or Form I–39. The reasons for the appeal shall be stated briefly in the Notice of Appeal, Form I–290A; failure to do so may constitute a ground for dismissal of the appeal by the Board. When service of the decision is made by mail, as authorized by this section, 3 days shall be added to the period prescribed for the taking of an appeal.

Both regulations require that an appeal be filed within 10 days of an oral decision or within 13 days of a written decision served on the petitioner by mail.[3]

Most immigration hearings in Hawaii are held by a visiting Immigration Judge. Because there is no clerk or resident Immigration Judge in Honolulu, all documents, including notices of appeal, must be filed by mail in the Office of the Immigration Judge which presided over the hearing (generally San Diego for petitioners in Hawaii). The Office does not accept filing fees, however, so petitioners must first pay fees to the INS cashier in Honolulu and then send the notice of appeal to the Office for filing with proof of payment.

If a waiver of the filing fee is requested, the notice of appeal is sent directly to the Office and is not filed until the fee waiver is approved. The government has failed to adequately explain the procedure for approval of fee waivers, despite two separate supplemental briefing orders by this court. It is unclear whether the Immigration Judge or the BIA adjudicates the fee waiver.[4] It appears that at some time prior to 1988 the Immigration Judges adjudicated fee waivers. Although the government contends that the BIA now adjudicates fee waivers, Gonzalez–Julio has introduced affidavits demonstrating that Immigration Judges continued to rule on fee waivers at the time Gonzalez–Julio submitted his appeal to the BIA.

Although INS regulations provide that an appeal is "filed" upon receipt, 8 C.F.R. § 3.13, no record is kept of when the notice of appeal is received, nor is a notice of appeal date-stamped upon receipt. Contrary to the representations of government counsel, the record is clear that at least some notices of appeal are not date-stamped upon receipt by the Office. Gonzalez–Julio's notice of appeal

did not contain such a stamp for the date it was received.

## DISCUSSION

### I.

■ The government first argues that we do not have jurisdiction to review the BIA's dismissal because Gonzalez–Julio did not timely appeal the order of the Immigration Judge, and thus has not exhausted his administrative remedies. *See* 8 U.S.C. § 1105a(c) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations"); *Vargas v. INS,* 831 F.2d 906, 907–08 (9th Cir.1987) (statutory exhaustion requirement is jurisdictional); *Hyun Joon Chung v. INS,* 720 F.2d 1471, 1474 (9th Cir.1983) (order of deportation cannot be reviewed unless petitioner has exhausted administrative remedies), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984).

However, we are reviewing the BIA's summary dismissal of the appeal, *not* the Immigration Judge's order of deportation. The BIA's dismissal is a final agency action for which Gonzalez–Julio can petition for review. 8 C.F.R. § 3.1(d)(2) (decision by Board is final).

Moreover, the BIA "has no jurisdiction to adjudicate constitutional issues," *Bagues–Valles v. INS,* 779 F.2d 483, 484 (9th Cir. 1985), and thus could not have addressed Gonzalez–Julio's due process challenge. *See also Vargas,* 831 F.2d at 908 (due process claims generally exempt from exhaustion since BIA does not have jurisdiction to adjudication constitutional issues). We have jurisdiction to determine whether the BIA properly dismissed the appeal for untimeliness.

---

3. In *Vlaicu v. INS,* 998 F.2d 758, 759 n. 1 (9th Cir.1993), we recognized that section 3.38(b) can be read as adding three days if the notice of appeal is mailed. *See* § 3.38(b) ("Time will be 13 days if mailed.").

4. *See* 8 C.F.R. § 3.3(b) ("The Board may, in its discretion, authorize the prosecution of any appeal or motion without prepayment of fee."). *But see* 8 C.F.R. § 3.24 ("Any fees pertaining to a

matter within the Immigration Judge's jurisdiction may be waived by the Immigration Judge upon a showing that the respondent/applicant is incapable of paying the fees because of indigency."). Immigration Judge John Williams declared that fee waivers for appeals are not within his jurisdiction. (*See* Att. C to government's first supplemental brief.) No regulation or case law is cited for this proposition.

## II.

Gonzalez–Julio challenges the constitutionality of the regulations governing the time and/or method for filing a notice of appeal. Whether administrative procedures infringe constitutional rights is a legal issue reviewed *de novo*. *See Roque–Carranza v. INS*, 778 F.2d 1373, 1374 (9th Cir.1985) (claim of violation of due process reviewed *de novo*).

The government does not dispute that the right to file an appeal is protected by the Due Process Clause. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982) (a cause of action is "property" protected under the Due Process Clause), *citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958) (constitutional limitations on court's dismissal of action without opportunity to be heard on the merits). The government also does not dispute that aliens are entitled to due process in deportation hearings. *See Toquero v. INS*, 956 F.2d 193, 196 (9th Cir. 1992) ("it is clear that deportation proceedings must afford procedural due process"; "the BIA's procedures in summarily dismissing appeals must not be so arbitrary as to undermine the principles of due process") (citations omitted).

We must decide whether Gonzalez–Julio received what process is due to protect his right to appeal. Essentially, Gonzalez–Julio argues that it is fundamentally unfair to require him to file an appeal within such a short period of time because he is forced to mail his notice of appeal from Hawaii and he has no control over the mail nor over when the Office of the Immigration Judge files the appeal after receipt.

While procedural requirements such as statutes of limitations, filing fees, and reasonable evidentiary rules may be imposed on the right to adjudication, due process requires an "opportunity [to be heard] ... granted at a meaningful time and in a meaningful manner." *See Logan*, 455 U.S. at 437, 102 S.Ct. at 1159.

To determine whether the filing procedures grant a "meaningful" opportunity to appeal an order of deportation, we must weigh the interest of the petitioner in filing the appeal, the risk of erroneous deprivation of that interest through the procedures employed, the probable value of additional procedural safeguards, and the interest of the government in using the current procedures. *See Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). In immigration cases, "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause." *Id.* at 34–35, 103 S.Ct. at 330.

Gonzalez–Julio's interest in filing the appeal from the order of deportation is, of course, a strong one. He "stands to lose the right to stay and live and work in this land of freedom." *Id.* at 34, 103 S.Ct. at 330 (quotation omitted).

Following the established procedures for filing an appeal, there is substantial risk that an appeal will not be timely filed. There are two risks of delay in filing which are not within the petitioner's control: delay in mail delivery and delay in filing after receipt by the Office.

A ten-day deadline for filing an appeal, without extra time given if the notice of appeal is mailed, entails a substantial risk that a notice of appeal will not be timely. Because a petitioner's attorney must obtain the client's signature and arrange for payment of the filing fee to the INS office in Honolulu (which has limited hours of operation) *prior to* mailing the notice of appeal, a notice of appeal is in many cases impossible to file immediately. A slight delay in mail delivery from Hawaii to the mainland United States may thus be fatal to an appeal which has been pursued with diligence.

While the risk of missing a filing deadline is always present when a document is mailed, it is impossible for the vast majority of petitioners living in Hawaii to alleviate this risk by personal delivery due to the extraordinary cost of travelling to the mainland. In *Houston v. Lack*, 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988), the Supreme

Court held that the delivery of a notice of appeal to prison authorities by a prisoner without counsel constituted filing in federal court. The Court held that because prisoners without counsel cannot take steps to monitor the processing of notices of appeal, such as personal delivery, their situation is unique and required a deviation from the traditional rules. *Id.* at 270–71, 108 S.Ct. at 2382–83. Immigration petitioners living in Hawaii, with or without counsel, are subject to similar restraints on their ability to ensure the prompt delivery of a notice of appeal.

Moreover, any delay by the Office of the Immigration Judge or the BIA once the notice of appeal is received is not within a petitioner's control. Where a waiver of filing fee is requested, as it was in this case, the Immigration Judge or the BIA must approve the waiver *before* the notice of appeal is filed. The government has not cited any regulations, rules, or guidelines that the Immigration Judges or the BIA must follow in processing the requests for a fee waiver, and there is no evidence in the record regarding the amount of time such processing takes. It is clear that a notice of appeal timely received by the Office should be timely filed. *See Aldabe v. Aldabe,* 616 F.2d 1089, 1091 (9th Cir.1980) (notice of appeal received, but not filed, by a district court prior to the filing deadline was timely: "[b]ecause an appellant has no control over delays between receipt and filing, a notice of appeal is timely filed if received by the district court within the applicable period specified in Rule 4."); *Houston,* 487 U.S. at 271–73, 108 S.Ct. at 2383.

There are numerous alternative filing procedures which could alleviate the risk petitioners run by mailing their appeals to the Office for filing. Prior to 1987, the Office of Immigration Review allowed the filing of notices of appeal with the INS office in Honolulu. The INS would file-stamp the notice of appeal, and notices timely filed with the INS were considered timely filed by the Office. This was changed sometime between March 1987 and December 1989[5] to the present system. Deeming an appeal filed as of the date the fee is paid to the INS would entail no extra cost to the government. Notices of appeal for which a fee waiver request has been made could be date-stamped at the INS office and then forwarded by a petitioner to the Office for consideration. In addition, a notice of appeal should be date-stamped upon receipt in the Office.

In weighing the government's interests in the present filing procedure, consideration must be given to the circumstances involved in administering the immigration laws. *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1048–50, 104 S.Ct. 3479, 3488–89, 82 L.Ed.2d 778 (1984); *Landon,* 459 U.S. at 34–35, 103 S.Ct. at 330–31. The governmental objective in any deadline for filing an appeal is to cut off a right to appeal to bring litigation to an end. *Hernandez–Rivera v. INS,* 630 F.2d 1352, 1354 (9th Cir.1980). While the creation of a deadline is surely a legitimate government interest, the government has not demonstrated its interest in failing to give extra time for mailing a notice of appeal. The government cannot contend that the ten-day deadline reduces frivolous appeals. Rather, frivolous appeals might be *encouraged* due to the incentive to immediately file an appeal to preserve that right. In *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the Supreme Court rejected the state's reasons for imposing a double-bond requirement for appeal to screen out frivolous appeals. The Court noted that "it not only bars non-frivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." *Id.* at 78, 92 S.Ct. at 876. Similarly here, the ten-day filing requirement prevents meritorious appeals which are delayed in the mail or which are submitted for approval of the fee

5. The practice of filing a notice of appeal in the INS office was established on March 12, 1984, when local Immigration Judges established local rules to be followed in Hawaii. (*See* Att. E to government's second supplemental brief). While the government represents that all local rules were superseded by the promulgation of uniform national rules on March 2, 1987 (such as 8 C.F.R. § 3.3 and 3.6), these "uniform" rules were apparently not enforced and the old procedure was continued until the issuance of a memorandum by Office staff in December, 1989 "reminding" immigration practitioners of the proper filing procedures. (*See* Att. K to government's second supplemental brief).

waiver, but allows meritless appeals filed within the time limit.

Further, the government interest in cutting off appeal after ten days is unpersuasive in this case in light of the fact that the BIA took two and one-half years to decide that this appeal was untimely. As the Court stated in *Logan*, "the procedure at issue does not serve generally to hasten the processing or ultimate termination of [the] controversies.... there are no statutory time limits at all on the length of time it can take to resolve the claim." *Logan*, 455 U.S. at 441, 102 S.Ct. at 1160 (Blackmun, J., for the plurality).

Finally, while the government contends that it experienced problems with the actual *filing* of documents at the INS office in Honolulu (such that the visiting Immigration Judges often received incomplete and late documents), the government has not demonstrated its interest in refusing to date-stamp the notices of appeal at the INS office in Honolulu, followed by actual filing in the Office.

### CONCLUSION

In summary, the procedure presently employed for filing notices of appeal results in uncertainty and arbitrary results for petitioners in Hawaii. Where a petitioner residing in Hawaii has only ten days to appeal an order of deportation, has no control over the delivery of the mail, and has no control over whether the appeal is filed upon receipt in the Office of the Immigration Judge (especially when a fee waiver is requested), the risk of erroneous deprivation of the petitioner's interest in filing an appeal is substantial. Other procedures that would increase the predictability of filing for petitioners in Hawaii, such as extra time for mailing, date-stamping at the INS office, and date-stamping upon receipt at the Office of the Immigration Judge, are available at little or no cost to the government. Moreover, the government has failed to demonstrate its interest in using the current procedures. Those procedures, as applied to petitioners residing in Hawaii, do not meet "the essential stan-

dard of fairness under the Due Process Clause." *Landon*, 459 U.S. at 35, 103 S.Ct. at 330.[6]

## PETITION FOR REVIEW GRANTED.

---

**6.** We need not address petitioner's arguments that the filing regulations violated his equal protection rights, that he demonstrated "excusable neglect" for the untimely appeal, and that there is substantial evidence that the appeal was, in fact, timely filed.