**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ORLANDO TURCIOS,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

No. 05-72258

Agency No.
A18-473-869

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2009—San Francisco, California

Filed September 29, 2009

Before: Eugene E. Siler, Jr.,* Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Siler;
Dissent by Judge Kleinfeld

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

Martin Avila Robles, San Francisco, California, for the petitioner.

Allen W. Hausman, U.S. Department of Justice, Washington, DC, for the respondent.

## OPINION

EUGENE E. SILER, JR., Senior Circuit Judge:

Orlando Turcios petitions for review of the Board of Immigration Appeals's (BIA) denial of his motion to reconsider its rejection of his appeal of an Immigration Judge's (IJ) decision as being untimely filed. Because we lack jurisdiction to review the petition, it must be dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

Turcios is a citizen of Nicaragua. In October 2003, removal proceedings were commenced against him. The notice to appear alleged that Turcios was admitted to the United States

as a lawful permanent resident in 1968, sought to reenter the United States in 2003, was paroled into the United States for deferred inspection, and had his parole was revoked in October 2003. Turcios was previously convicted of sale of cocaine, felony spousal abuse, resisting arrest, and eight separate instances of petty theft while in the United States. The notice to appear indicated that he was removable under 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) and (II) for his convictions for a crime relating to a controlled substance, and a crime involving moral turpitude. At the hearing before the IJ, Turcios admitted all of his convictions and conceded removability. The IJ issued the order of deportation. On the order, the IJ instructed that any appeal to the BIA was "due by 12/23/04."

On December 22, 2004, one day before the notice of appeal was due, Turcios's counsel delivered the notice to Federal Express for overnight delivery. The notice of appeal was not received by the BIA until December 27, 2004.

The BIA entered an order dismissing the appeal as untimely. Turcios filed a motion before the BIA to reconsider its decision and reopen his proceedings. His motion explained that the notice was delivered late due to severe winter weather conditions. He attached a letter from Federal Express indicating that the late delivery was due to the winter weather.

In March 2005, the BIA denied the motion to reconsider because the motion merely offered an explanation for late delivery and did not expose an error of fact or law in the prior decision. This petition followed.

## STANDARD OF REVIEW

This court has jurisdiction over petitions for review to "determine our jurisdiction." *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 586-87 (9th Cir. 2005), *adopted in part by*, 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc) ("We adopt the portion of the panel's opinion addressing the government's

claim that, under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction . . . .”). We review the jurisdictional limitations of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) de novo. *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004).

## DISCUSSION

Generally, the Courts of Appeals have jurisdiction to review final removal orders of the BIA. 8 U.S.C. § 1252(a). However, Congress has restricted judicial review where an alien is removable based on a conviction for certain crimes. 8 U.S.C. § 1252(a)(2)(C). Such crimes include those involving moral turpitude (other than a purely political offense), 8 U.S.C. § 1182(a)(2)(A)(i), and a violation of any state law relating to a controlled substance other than a single offense of possession of a small quantity of marijuana, 8 U.S.C. § 1182(a)(2)(B)(i).

Turcios’s convictions are covered under 8 U.S.C. § 1252(a)(2)(C). He admitted that he was previously convicted of sale of cocaine, felony spousal abuse, resisting arrest, and eight separate instances of petty theft while in the United States. Petty theft is a crime involving moral turpitude, *United States v. Esparza-Ponce*, 193 F.3d 1133, 1135-37 (9th Cir. 1999), and spousal abuse is a crime of moral turpitude. *Grageda v. U.S. INS*, 12 F.3d 919, 922 (9th Cir. 1993).

[1] As noted by Turcios, the REAL ID Act of 2005 provides that the restriction on judicial review for criminal aliens be construed so as to preserve this court’s jurisdiction to address constitutional claims and issues of law raised in petitions for review. *Fernandez-Ruiz*, 410 F.3d at 587. Turcios argues that whether the BIA abused its discretion in denying the motion to reconsider as untimely is a question of law which this court has jurisdiction to consider.

[2] In reviewing this question, other courts have determined that the REAL ID Act does not confer jurisdiction over chal-

lenges to the exercise of routine discretion by the BIA. *See De La Vega v. Gonzales*, 436 F.3d 141, 146 (2d Cir. 2006) (holding that upon review of circuit case law and the legislative history of Section 106 of the REAL ID Act, nothing in that section confers jurisdiction over challenges to the exercise of routine discretion by the BIA); *Xiao Ji Chen v. United States*, 434 F.3d 144, 151-54 (2d Cir. 2006) (holding that challenges to the exercise of routine discretion by the Attorney General (or the IJ as his designee) do not raise "constitutional claims or questions of law" under Section 106 of the REAL ID Act); *Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005) ("[Section 106] grants no jurisdiction to review an IJ's purely discretionary decision to deny a continuance of a removal hearing, unless that ruling resulted in such procedural unfairness as to implicate due process."); *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005) ("Notwithstanding § 106(a) of the [REAL ID] Act, . . . discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review."); *Gattem v. Gonzales*, 412 F.3d 758, 767 & n.8 (7th Cir. 2005) (holding that, under Section 106, the Courts of Appeals have jurisdiction to consider "question[s] of law" raised in petitions for review, but not discretionary decisions of the Attorney General).

**[3]** Turcios challenges only the BIA's denial of discretionary relief of reconsideration of its prior decision dismissing the untimely notice of appeal. He does not raise any constitutional challenges, nor does he raise any questions of law as contemplated by the REAL ID Act. Since the BIA's denial of Turcios's motion to reconsider was an exercise of routine discretion, we dismiss for lack of jurisdiction.

**DISMISSED.**

---

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. I am filing the same dissent in *Irigoyen-Briones v. Holder*, No. 07-71806 and *Turcios v.*

*Holder*, No. 05-72258, because these two cases raise identical legal issues, in materially similar factual and legal contexts. The issue in both cases is whether the Board of Immigration Appeals ought to have considered an appeal that was sent in time to arrive before the deadline, and was guaranteed by the shipper to arrive in time, but got stamped in at Board head-quarters the day after the due date. The merits are not at issue before us, just lateness. The issue of lateness affects innumer-able cases, and it is a matter of chance whether an alien attempting to appeal falls into this pit.

In *Turcios*, the alien's lawyer attached to his motion for reconsideration a letter from FedEx Express. FedEx says that although "the shipment was due for delivery by 10:30 a.m. on December 23 . . . severe weather conditions caused an exten-sive and lengthy disruption of our transportation system, and thus the parcel did not reach its destination on the anticipated date. Delivery was completed on December 27 at 10:00 a.m."

In *Irigoyen-Briones*, the alien's lawyer personally brought the notice of appeal to the post office first thing in the morn-ing for guaranteed express mail delivery the next day, which would have been timely. However, for the first time in over ten years, Irigoyen-Briones's attorney was let down by late Express Mail delivery. A clerk told her that some sort of error appeared to have been made by the post office at the airport in Virginia. The post office error caused the notice of appeal to get to the BIA a day late.[1]

Although the BIA interprets the statutes and regulations as requiring that filing deadlines be strictly enforced, the BIA also acknowledges that it has the authority to relieve litigants from the consequences of late filing for "exceptional circum-

[1]With the drollness characteristic of these sorts of errors, FedEx said that it regretted "any inconvenience," and the United States Postal Service offered to refund the postage counsel had paid for guaranteed next day delivery.

stances."[2] The BIA, in both cases, followed its own panel decision in *In re Liadov*,[3] which held that "short delays by overnight delivery services" are not "extraordinary," so "appellants must take such possibilities into account and act accordingly."[4] The only place notices of appeal can be filed is Falls Church, Virginia,[5] so evidently "act accordingly" means fly to one of the D.C. area airports or send the notice at some unknown and unpredictable time prior to the deadline so that the BIA would think the delivery service delay "extraordinary." The Board holds that even though it lacks authority to extend the thirty day deadline, it does have authority to "certify a case to itself under 8 C.F.R. 1003.1(c)" "where a case presents exceptional circumstances."[6]

Oddly, the BIA does not provide for any means of filing notices of appeal other than showing up in Falls Church, Virginia—not a trip most aliens could afford to pay their lawyers to make from outside the Beltway—or sending the papers by post office or private delivery service. Federal courts, no seekers of novelty themselves, generally provide for electronic case filing.[7] The Federal Rules of Civil Procedure expressly address electronic filing.[8] Doubtless electronic

---

[2]*See* 8 C.F.R. § 1003.1(c); *In re Liadov*, 23 I&N Dec. 990 (BIA 2006).

[3]23 I&N Dec. 990 (BIA 2006).

[4]23 I&N Dec. at 993.

[5]*See* Executive Office of Immigration Review, U.S. Dep't of Justice, *Form EOIR-26*, *1 (2008), http://www.usdoj.gov/eoir/eoirforms/eoir26.pdf.

[6]*In re Liadov*, 23 I&N Dec. 990, 993 (BIA 2006).

[7]*See, e.g.*, 9th Cir. Admin. Order Re Electronic Filing (Nov.10, 2008); 3d Cir. R. 25.1; 4th Cir. Admin. Order 08-01 (Apr. 1, 2008); 6th Cir. Admin. Order 08-01 (May 7, 2008); 8th Cir. R. 25A; 10th Cir. Gen. Order 95-01 (Mar. 18, 2009); D.C. Cir. Admin. Order (May 15, 2009); D. Alaska R. 5.3; C.D. Cal. Gen. Order 08-02 (Feb. 7, 2008); E.D. Cal. R. 5-133; N.D. Cal. Gen. Order 45 (Nov. 18, 2004); S.D. Cal. R. 5.4; D. Haw. Gen. Order (May 1, 2006); D. Idaho R. 5.1; D. Mont. R. 5.1; D. Or. R. 100.3; E.D. Wash. R. 5.1; W.D. Wash. R. 5.

[8]Fed. R. Civ. P. 5(d)(3).

filing saves attorneys in places like Alaska, or for that matter most of the rest of the country, a great deal of money on ulcer medicine, and more important, saves their clients from the risk of arbitrary horrendous consequences due to chance post office and delivery delays. It was an Act of God that weather prevented timely delivery of Turcios's FedEx package, but the consequence of that late delivery was easily avoidable by people at the agency. Just as we have for many decades assumed the availability of telephones, automobiles, and airplanes, we ought to be able to assume the availability of email over the internet.

The Board has tossed a couple of red herrings across the path to justice. First, it says that the thirty day deadline is jurisdictional and it lacks authority to extend it. But as the Board says in *Liadov*, it nevertheless retains authority to grant relief from late filing in "exceptional" or "extraordinary" circumstances. Second, the Board says it does not have a "mailbox rule." This argument is irrelevant, because no one argues that it does. A "mailbox rule" means that an act is deemed accomplished when the required submission is mailed as opposed to when it is received or filed. For example, a "mailbox rule" lets us comply with the April 15 due date for tax returns by mailing them that day,[9] and lets attorneys comply with motion and opposition deadlines by service, that is, mailing, rather than receipt or filing.[10] The lawyers for Turcios and Iriguyen-Briones contend, not that the notices of appeal should be deemed filed when they sent them, but rather that they ought to be relieved from lateness because they sent them such that ordinarily they would have been received timely.

*Liadov*, on which the Board relies in both these cases, itself relies heavily on the Board's own Practice Manual, for which

---

[9]26 U.S.C.A. § 7502(a).

[10]Fed. R. Civ. P. 5(b)(C).

it gives an internet citation.[11] The disclaimer at section 1.1(c) of the manual says it does not carry the force of law or regulation and should not be relied on, so *Auer* and *Chevron* deference to it would be inappropriate. The Manual says that "[b]ecause filings are date-stamped upon arrival at the Board, the Board strongly recommends that parties file as far in advance of the deadline as possible, and, whenever possible, use overnight delivery couriers, (such as United Parcel Service, Federal Express, Airborne Express, DHL) to assure timely receipt."[12] We said in *Oh v. Gonzales*[13] that "use of one of the overnight delivery services the BIA expressly recommends . . . would appear to qualify [petitioners] for relief from late filing as a unique or rare circumstance—or at least to be considered for such relief, with some reasoned explanation should the BIA reject [petitioners] proffered excuse." Here, the BIA simply brushed aside Turcios's and Irigoyen-Briones's explanations for the lateness of their notices of appeal and deemed them untimely filed, even though both provided persuasive evidence that they had acted reasonably to cause timely filing.

Once we get past the red herrings, the remaining question is whether the Board may, in interpreting the statute under which it operates and the Constitution, refuse to hear appeals where the aliens have done what is reasonably necessary, using the carriers the Board recommends, to assure that their appeals have been filed on time, and through no fault of their own, the papers are stamped in late. In my view, the principle of constitutional avoidance[14] requires that the statute and regu-

---

[11]Board of Immigration Appeals Practice Manual, http://www.usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm

[12]BIA Prac. Man. § 3.1(b).

[13]406 F.3d 611, 613 (9th Cir. 2005).

[14]*See Public Citizen v. United States Department of Justice*, 491 U.S. 440, 466 (1989) ("It has long been an axiom of statutory interpretation that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.") (quotation omitted).

lation be construed if possible to require that such notices of appeal be deemed timely. In the absence of such a construction, the Board's rigid position denies aliens due process of law.

As the majority concedes, we held in *Oh v. Gonzales*[15] that the time limit for appeal to the BIA was subject to discretionary relief. We further held that its construction of its filing deadline—limiting relief to *sua sponte* reconsideration in exceptional circumstances—was an error of law. To my mind, it stretches deference to administrative agencies too far to hold, as the majority does, that by insisting on its error, *Liadov* makes the error good law. We defer only to reasonable constructions. *Liadov* is not a reasonable construction by the BIA of its regulations, because this construction deprives aliens who attempt to appeal of due process of law.

The Second Circuit in *Zhong Guang Sun v. U.S. Dep't of Justice* joins our view in *Oh* and cites language consistent with our view from the Sixth, Seventh, and Eighth Circuits.[16] Where the petition came in several days late because of an Airborne Express error, the Second Circuit holds that the BIA did not lack jurisdiction, and remands because failure of timely delivery by a courier service designated in the BIA's practice manual "may well, indeed, fall within the realm of the 'extraordinary' if not the 'unique.' "[17]

---

[15]406 F.3d 611 (9th Cir. 2005).

[16]421 F.3d 105, 111 (2d Cir. 2005). The Eighth Circuit has now upheld the Board's construction against a due process challenge. *Liadov v. Mukasey*, 518 F.3d 1003, 1012 (8th Cir. 2008). Other circuits have as well, but in decisions predating the Supreme Court's clarification that non-statutory time limits are not jurisdictional. *Bowles v. Russell*, 551 U.S. 205 (2007); *see Liadov*, 518 F.3d at 1008-09 & n.4; *Khan v. U.S. DOJ*, 494 F.3d 255, 258-59 & n.4 (2d Cir. 2007) (concluding in light of *Bowles* that the regulatory time limit was not jurisdictional).

[17]*Zhong Guang Sun*, 421 F.3d at 111.

The agency's interpretation conflicts with the Supreme Court's interpretation in *Houston v. Lack*.[18] Even though federal courts of appeal deadlines for filing notices of appeal are jurisdictional, *Houston* holds that pro se prisoners are deemed to have filed timely when they have not actually filed, but have timely tendered their papers to prison officials. And, the last day is fine—they need not have given their papers to prison officials a few days before the filing deadline. The reason is that they "ha[ve] done all that could reasonably be expected" to file on time.[19] Substituting "aliens" for "prisoners" in *Houston*'s ratio decidendi suggests that *Houston* ought to be extended to aliens.

> Such [aliens] cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the [clerk] receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, [aliens] cannot personally travel to [Falls Church, VA] to see that the notice is stamped "filed" or to establish the date on which the [board] received the notice. . . . No matter how far in advance the [aliens] delivers his notice to [the mailing service], he can never be *sure* that it will ultimately get stamped "filed" on time.[20]

We extended *Houston* to aliens' appeals to the BIA in *Gonzalez-Julio v. INS*.[21] There we went so far as to hold that the then-ten day limit for filing notices of appeal denied due process of law. The reason was that there were "two risks of delay which were not in the aliens control: delay in mail delivery and delay in filing after receipt by the Office."[22]

---

[18]487 U.S. 266 (1988).

[19]*Id.* at 270.

[20]487 U.S. at 270-71 (emphasis in original).

[21]34 F.3d 820 (9th Cir. 1994).

[22]34 F.3d at 823.

Applying the principle enunciated by the Supreme Court in *Logan v. Zimmerman Brush Co.*[23] we held that the alien was entitled by the Due Process Clause to an opportunity to be heard on his appeal "at a meaningful time and in a meaningful manner."[24] In *Gonzales-Julio*, fifteen years ago, we noted that the BIA could obviate much of the problems reasonable accommodation could cause by allowing filing within a reasonable distance of the alien's residence instead of limiting it to Falls Church, Virginia. Now, fifteen years later, the government's justification for requiring physical filing in Falls Church has become technologically obsolete, and the practicality of enforcing a rigid filing date without arbitrariness much greater, because the Board could easily adopt electronic filing. There would be nothing wrong with a rigid filing deadline if it could be complied with from anywhere in this huge country by email. A rigid deadline is fundamentally unfair if people cannot assure their own compliance.

The BIA's answer to the application of the *Houston* "not within his control" justification for requiring acceptance of late filing is that the alien should "file as far in advance of the deadline as possible."[25] That answer is constitutionally unsatisfactory because a person with fundamental interests at stake is entitled to certainty about when he must ask to be heard in order to get a hearing. Nor is thirty days so long a time that a few days here or there should not matter to the alien. The alien owns the thirty days. He needs to know, for purposes of filing on time, exactly when they end.

All of the thirty days are likely to be essential. Aliens' appeals are not, by and large, handled by giant spare-no-expense law firms, in which a partner can command a senior associate who can command a junior associate to have something on his desk by 9:00 A.M. Monday without fail, and

---

[23]455 U.S. 422 (1982).

[24]*Gonzalez-Julio*, 34 F.3d at 823 (quoting *Logan*, 455 U.S. at 437).

[25]*Liadov*, 23 I. & N. Dec. at 992.

whatever expenses are necessary to accomplish that will be borne. The record in Iriguyen-Briones describes the details of a typical case, and there is no reason to doubt that they are typical. The alien had lost his case before the IJ *pro se*, just before Christmas on December 18, and came to a lawyer's office right after New Year's, January 4. The lawyer could not do anything without listening to the Immigration Court's tapes (not yet transcribed, of course), and needed a retainer before investing the time to do so. The alien needed a few days to raise some money, came in with enough the following Monday, counsel got an appointment with the Immigration Court to listen to the tapes Thursday, and drove the 45 miles to the court. Counsel then researched the applicable law necessary to formulate the notice of appeal on that day and the next (Friday) and prepared the notice. Monday was Martin Luther King day, so counsel drove to the post office herself first thing in the morning Tuesday, and sent the papers express mail for guaranteed delivery Wednesday, which is when they were due. She did not drop the ball, the post office did, and as is common, all thirty days were reasonably necessary for the task (too short, actually—the tapes ran longer than the time the Immigration Court had for counsel to listen to them on Thursday before the next lawyer's appointment).

"The fundamental requisite of due process of law is the opportunity to be heard."[26] The interest at stake in immigration cases, as in many others, is very important. Though some are frivolous, some are an alien's only chance to avoid unjustified destruction of his family or even torture and death in some benighted country. Due process of law requires that the government refrain from destroying life, liberty, or property with fundamentally unfair procedure. It does so if it denies a person an opportunity within his control to be heard. In these two cases, that is what it did. What is worse, the government's important interest in proceeding expeditiously with these cases and requiring compliance with reasonable time limits

---

[26]*Grannis v. Ordean*, 234 U.S. 385, 395 (1914)

can easily be protected, without subjecting aliens to the risk of losing their appeals to bad weather or post office error. All it need do is what courts and private companies routinely do: allow people to email their notices of appeal. It is a cruel irony that the Board publishes the manual that lawyers are supposed to use as guidance on the internet, yet pretends the internet does not exist when it comes to receiving papers as opposed to distributing them.