**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GUILLERMO IRIGOYEN-BRIONES, aka
Jose Vega-Ramirez,
                        *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 07-71806

Agency No.
A096-384-113

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2009—San Francisco, California

Filed May 31, 2011

Before: Eugene E. Siler,* Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Kleinfeld

---

*The Honorable Eugene E. Siler, Senior Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

Charles E. Nichol, San Francisco, California, for the petitioner.

Charles E. Canter, (argued), United States Department of Justice, Washington, D.C., and Luis E. Perez, (briefed), United States Department of Justice, for the respondent.

## OPINION

KLEINFELD, Circuit Judge:

We address[1] whether the thirty-day deadline for filing a

---

[1]We previously decided this case in an opinion filed September 29, 2009. *Irigoyen-Briones v. Holder*, 582 F.3d 1062 (9th Cir. 2009). A peti-

notice of appeal with the Board of Immigration Appeals (BIA) is jurisdictional.

## I. Facts

Guillermo Irigoyen-Briones, a native and citizen of Mexico, entered the United States illegally in 1991. In 2003, United States Immigration and Customs Enforcement commenced removal proceedings against him.[2] Irigoyen-Briones appeared pro se at a hearing before an Immigration Judge (IJ) on December 18, 2006, and conceded removability, but he sought cancellation of removal or alternatively voluntary departure.[3] The IJ decided against him on both issues. He had thirty days to appeal.

Irigoyen-Briones went to a lawyer's office shortly after the new year, on Thursday, January 4. The lawyer could not do anything without listening to the Immigration Court's tapes (not yet transcribed, of course), and she needed a retainer before she invested the time that it would take. Irigoyen-Briones needed a few days to raise the money, and came in with enough to retain her the following Monday, January 8, 2007. His lawyer promptly made an appointment with the Immigration Court so that she could listen to the tapes, for Thursday morning, January 11, 2007. That morning, she drove the 45 miles to Immigration Court and listened to what she could (the appointment did not allow her enough time to listen to the tapes in their entirety). She then performed the

tion for rehearing en banc, and a call for rehearing en banc and exchange of memoranda within the court, led us to reconsider our views. Our September 29, 2009, opinion in this case and its companion case, *Turcios v. Holder*, 582 F.3d 1075 (9th Cir. 2009), were vacated. *See Irigoyen-Briones v. Holder*, 608 F.3d 491 (9th Cir. 2010); *Turcios v. Holder*, 608 F.3d 491 (9th Cir. 2010). We now issue this opinion in its stead.

[2]The proceedings were pursuant to Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).

[3]8 U.S.C. § 1231(b)(3); 8 U.S.C. § 1229c.

necessary legal research that Thursday and Friday, January 11 and 12, and prepared the notice of appeal. Monday January 15 was Martin Luther King Jr. day, so the post office was closed. Counsel drove to the post office herself first thing Tuesday morning, January 16, and sent the papers express mail for guaranteed delivery the day that they were due, Wednesday, January 17.[4]

Though the post office had never let her down on express mail service before, it did this time. The papers arrived at the BIA's Falls Church, Virginia office (the only place where they may be filed) a day late. The post office sent her a form so that she could get back the money she had paid for guaranteed next-day delivery, but that was not much of a remedy for her client getting deported. A clerk told her that some sort of error appeared to have been made by the post office at the airport in Virginia. The post office "guarantee" of next day delivery assures no more than a refund of the extra fee the post office charges if they break their promise.

The BIA dismissed the appeal as untimely because the papers were filed a day late. Irigoyen-Briones's lawyer filed a motion for reconsideration or, in the alternative, for the BIA to certify the appeal to itself. She argued that the BIA had jurisdiction over his untimely appeal in light of the "rare circumstances" exception explained in *Oh v. Gonzales*, 406 F.3d 611, 613 (9th Cir. 2005), and *Zhong Guang Sun v. U.S. Department of Justice*, 421 F.3d 105, 111 (2d Cir. 2005). The BIA denied the motion to reconsider.

---

[4]The Notice of Appeal was due at the BIA thirty days after the IJ's decision, in this case by January 17, 2007. *See* 8 C.F.R. § 1003.38(b) ("The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge (Form EOIR-26) shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision. If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day. A Notice of Appeal (Form EOIR-26) may not be filed by any party who has waived appeal.")

The BIA held that the thirty-day deadline was jurisdictional, so "the Board does not have the authority to extend the time in which to file a notice of appeal" under 8 C.F.R. § 1003.38(b), following its own 2006 decision in *Matter of Liadov*.[5] Irigoyen-Briones appeals, arguing that the BIA's determination that it does not have jurisdiction to accept an appeal filed one day late is incorrect. We agree.

## II.   Analysis

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D), which allows us to review questions of law. Jurisdiction is a legal question.

### A.   *Oh* and *Liadov*

This is the odd case where an agency whose decisions we review has overruled one of our decisions. We must decide whether the proper level of deference to the agency's interpretation of the law requires that we accept its legal view, and also whether Supreme Court decisions since, distinguishing jurisdictional from claim-processing rules, require a new interpretation.

We start with the statute and regulation. The statute provides that "the Attorney General shall issue regulations with respect to . . . the time period for the filing of administrative appeals in deportation proceedings . . . ."[6] The regulation issued pursuant to this statute says the notice of appeal "shall be filed directly with the Board of Immigration Appeals within 30 calendar days."[7] The Executive Office of Immigration Review provides in an online publication that the only way to accomplish this filing is by physical delivery to the

---

[5]*In re Liadov*, 23 I. & N. Dec. 990 (BIA 2006).

[6]Immigration Act of 1990, Pub. L. 101-649, § 545(d)(2), 104 Stat. 4978, 5066 (1990).

[7]8 C.F.R. § 1003.38(b).

BIA's Falls Church, Virginia office.**[8]** Neither the statute nor the implementing regulation uses the word "jurisdiction."

We had occasion to construe the filing requirement in a case like this one in *Oh v. Gonzales*.**[9]** In *Oh*, as here, the petitioner delivered her papers for overnight delivery so that they should have arrived in Falls Church on time, but the express delivery service erred and delivered her papers past the deadline. We held that the BIA's position, that it had no authority to accept the late filing because the deadline was jurisdictional, was erroneous as a matter of law. We noted that the regulation upon which the BIA relied there (and here), 8 C.F.R. § 1003.38, did not say that it was jurisdictional. Because the BIA, despite its "jurisdictional" argument, claimed authority to excuse late filings in "rare circumstances," and our prior authorities likewise had held that in "unique circumstances" lateness was excusable, the BIA's denial of Oh's motion for reconsideration was an abuse of discretion. We held that the BIA "jurisdiction" position was a "misconstruction of the jurisdictional nature of its own filing deadline," amounting to "legal error" rendering its discretionary decision "arbitrary, irrational, or contrary to law."

The Second Circuit decided the same question the same way in *Zhong Guang Sun v. U.S. Department of Justice*.**[10]** That was another late filing despite timely drop off at an overnight delivery service. There too the BIA claimed lack of authority to extend the time. And in *Zhong*, as we had in *Oh*, the Second Circuit held that the Board was mistaken as a matter of law. *Zhong* noted that the Service itself "strongly encouraged" aliens and their lawyers to use overnight delivery

---

**[8]***See* Executive Office of Immigration Review, U.S. Dep't of Justice, *Form EOIR-26*, *1 (2008), http://www.usdoj.gov/eoir/eoirforms/eoir26.pdf.

**[9]***Oh v. Gonzales*, 406 F.3d 611 (9th Cir. 2005).

**[10]***Zhong Guang Sun v. U.S. Dep't of Justice*, 421 F.3d 105, 109-11 (2d Cir. 2005).

services.[11] *Zhong* adopted our view that the BIA's jurisdictional argument was a "misconstruction" of its deadline.

Then the BIA went the other way in *Matter of Liadov*,[12] which the government urges us to follow. *Liadov* too was a timely drop off for guaranteed timely delivery, but delivery service error resulted in one day late arrival at the BIA's Falls Church office. The BIA expressly rejected *Oh* and *Zhong*, for two reasons. First, the Board emphasized the "importance of timely filings,"[13] and that "[m]eaningful filing deadlines are as critical to the smooth and fair administration of the Board as they are to the courts."[14] And second, the Board noted that "[n]either the statute nor the regulations grant us the authority to extend the time for filing appeals."[15] Nevertheless, the Board noted, "the Board may certify a case to itself" in "exceptional circumstances," even though the appeal was filed late.[16]

## B.   8 C.F.R. § 1003.38 is a non-Jurisdictional Claim-Processing Rule

*Liadov* does not use the word "jurisdiction." Nevertheless, the Board in *Liadov* said that it did not have "the authority" and in the case before us, the Board says it "does not have authority to extend the time . . . ." That language addresses

---

[11]The BIA's own Practice Manual says that "[b]ecause filings are date-stamped upon arrival at the Board, the Board strongly recommends that parties file as far in advance of the deadline as possible, and, whenever possible, use overnight delivery couriers (such as Federal Express, United Parcel Service, Airborne Express, DHL) to ensure timely receipt." Board of Immigration Appeals Practice Manual § 3.1(b), *available at* http://www.justice.gov/eoir/vll/qapracmanual/pracmanual/chap3.pdf.

[12]*In re Liadov*, 23 I. & N. Dec. 990 (BIA 2006).

[13]*Id.* at 991.

[14]*Id.* at 992.

[15]*Id.* at 993.

[16]*Id. See* 8 C.F.R. § 1003.1(c).

jurisdiction. The government argues in the case before us that *Liadov* addresses jurisdiction. The Board was not, in that case or this one, merely explaining its exercise of discretion whether to accept the late filing. The Board argues that the time deadline is indeed "jurisdictional."[17]

"Jurisdiction" means the legitimate exercise of judicial power. Power legitimately exercised is authority. When a court says "we lack authority" or "we lack jurisdiction," it is not saying "we exercise our discretion not to hear your case." It is saying "we lack legitimate authority to exercise our power in your case, and could not even if we wanted to." Since we held in *Oh* that the Board did have authority, and the Board held in Irigoyen-Briones's case that it did not, we must analyze whether the Board must defer to this court, or we must defer to the Board, on the question of the Board's jurisdiction.

**[1]** The Board claims that we must defer to the Board, and treat *Oh* as overruled, under *National Cable & Telecommunications Association v. Brand X Internet Services*[18] and subsequent Supreme Court authority holding that jurisdictional deadlines are not subject to equitable exceptions.[19] *Brand X* held that an FCC decision interpreting the Communications Act of 1934 was entitled to *Chevron*[20] deference even though

---

[17]In numerous unpublished decisions, the Board has said that it lacks jurisdiction to hear a case when the notice of appeal is untimely. *See, e.g.*, *In re Oliver Sherman Muli Wood*, 2009 WL 3335990 (BIA Oct. 8, 2009) ("Accordingly, we find that the appeal is untimely, and that we lack jurisdiction."); *In re Fernando Torrez Aguayo*, 2007 WL 927152 (BIA Feb. 28, 2007) ("Since the appeal is untimely, we lack jurisdiction.").

[18]*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).

[19]*See Bowles v. Russell*, 551 U.S. 205, 213-14 (2007) (overruling *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962), and *Thompson v. INS*, 375 U.S. 384 (1964)).

[20]*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

it conflicted with an earlier Court of Appeals ruling. In the course of its decision, the Court explained that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."[21] Thus, *Liadov* does indeed supersede *Oh* if the statute is ambiguous and the BIA's interpretation is reasonable.

**[2]** But under subsequent Supreme Court authority, we are bound to conclude that the statute is not ambiguous and is not jurisdictional. The statute says that "the Attorney General shall issue regulations with respect to . . . the time period for the filing of administrative appeals in deportation proceedings . . . ."[22] The regulation issued pursuant to this statute says the notice of appeal "shall be filed directly with the Board of Immigration Appeals within 30 calendar days."[23] Neither says anything about jurisdiction or authority. We avoid what might be a serious question[24] of whether an agency's exercise of its regulatory authority includes the authority to limit jurisdiction conferred by statute, by assuming without deciding that the thirty-day time limit may be treated as though it were statutory. The question then becomes whether the thirty-day time limit is jurisdictional.

**[3]** A recent line of Supreme Court decisions compels the conclusion that the thirty-day time limit is a claim-processing rule and not jurisdictional. *Kontrick v. Ryan*[25] held that a time limit was a "claim-processing rule," as distinct from a juris-

---

[21]*Brand X*, 545 U.S. at 982-83.

[22]Immigration Act of 1990, Pub. L. 101-649, § 545(d)(2), 104 Stat. 4978, 5066 (1990).

[23]8 C.F.R. § 1003.38(b).

[24]*Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction.").

[25]*Id.* at 454.

dictional limitation, noting that courts "have been less than meticulous . . . [in using] the term 'jurisdictional' to describe emphatic time prescriptions in rules of court."[26] Though there are exceptions, as for appeals to the circuit courts where the Supreme Court has long held that the time limit is jurisdictional,[27] the general rule is that "the label 'jurisdictional'[is] not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority."[28]

**[4]** The Court extended *Kontrick* in *Scarborough v. Principi*,[29] which involved a late application for EAJA fees to the United States Court of Appeals for Veterans Claims. The Court held that because "the current dispute . . . presents a question of time," and time prescriptions should generally be classified as claim-processing rules rather than jurisdictional rules, the thirty day deadline was not jurisdictional. Had there been any room for doubt after *Scarborough*, the recent unanimous decision in *Henderson v. Shinseki*[30] would eliminate it. That was another late filed veteran's claim. The Court held that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity," and "filing deadlines . . . are quintessential claim-processing rules" that "should not be described as jurisdictional."[31] Even though the time limits for filing appeals in Article III courts have been deemed jurisdictional,[32] the statutory language for appeals to

---

[26]*Id.*

[27]*See Bowles v. Russell*, 551 U.S. 205, 214 (2007).

[28]*Kontrick*, 540 U.S. at 455.

[29]*Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

[30]*Henderson v. Shinseki*, 131 S. Ct. 1197 (2011).

[31]*Id.* at 1202-03.

[32]*Bowles v. Russell*, 551 U.S. 205, 214 (2007). *Bowles* holds that the Court lacks authority to allow the use of a "unique circumstances" exception to the time limit for appeals to the Circuit courts, that time limit being genuinely jurisdictional. *Henderson* establishes that this interpretation does not apply to non-jurisdictional time limits in Article I courts, so *Oh* is not overruled by *Bowles*.

the Article I court at issue, "shall file . . . within 120 days," was not jurisdictional.

**[5]** Arguably, *Scarborough* and *Henderson* might have been limited because veterans' claims are traditionally treated liberally, but that argument cannot be made in light of the unanimous decision in *Arbaugh v. Y & H Corp.*[33] *Arbaugh* did not involve a class of litigants receiving special solicitude or even a time deadline. The arguably jurisdictional requirement in that case was the fifteen-employee threshold for Title VII claims. The unsuccessful employer tried to raise this after a jury verdict for the plaintiff, since jurisdictional requirements can never be waived. Emphatically narrowing past purportedly "jurisdictional" rulings, *Arbaugh* says that the Court itself had been "less than meticulous" in making " 'drive-by jurisdictional rulings' that should be accorded no precedential effect."[34] The Court characterized its recent decisions as holding that "time prescriptions, however emphatic, are not properly typed jurisdictional."[35] And that was so even where the Court itself had described them as "mandatory and jurisdictional," because the Court itself had been "profligate in its use of the term."[36]

**[6]** Congress did not set the thirty-day time limit before us. It delegated to the agency the power to issue regulations with respect to the time period for filing. And the regulation does not say that it is jurisdictional. Nor does the agency itself treat the time limit as jurisdictional. Instead, the agency sua sponte decides to exercise its authority where the reasons for lateness are "extraordinary,"[37] something it could not do if the time limit was jurisdictional. By reviewing cases where the late-

---

[33]*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).

[34]*Id.* at 511.

[35]*Id.* at 510 (citation and internal quotation marks omitted).

[36]*Id.*

[37]*See, e.g.*, *In re Slade*, 10 I & N Dec. 128, 128 (BIA 1962) (certifying untimely appeal in light of important issue of statutory construction).

ness is extraordinary, the agency interprets its own regulation as a non-jurisdictional claim-processing rule. Thus, in light of *Kontrick*, *Scarborough*, *Arbaugh*, and *Henderson,* the regulation has to be read as a claim-processing rule that is not jurisdictional. The BIA's rejection of our decision in *Oh*, and its jurisdictional interpretation of its regulation in this case, are mistaken as a matter of law. There is no ambiguous statute that would entitle the agency to deference under *Brand X* and *Chevron*, just an administrative claim-processing rule that must be treated as non-jurisdictional.[38]

## C.   Electronic Filing

In *Gonzalez-Julio v. INS*,[39] we went so far as to hold that the then-ten-day limit for filing notices of appeal denied due process of law. The reason was that there were "two risks of delay which [were] not in the [alien's] control: delay in mail delivery and delay in filing after receipt by the Office."[40] Applying the principle enunciated by the Supreme Court in *Logan v. Zimmerman Brush Company*[41] we held that the alien was entitled by the Due Process Clause to an opportunity to be heard on his appeal "at a meaningful time and in a meaningful manner."[42] Because the BIA erred as a matter of law, we need not decide whether arbitrary application of the time limit denied Irigoyen-Briones due process of law. The issue lurks though if the time limit is applied arbitrarily.

---

[38]This position, though on different grounds, finds support in both the Eighth and Tenth Circuits as well. Each has interpreted the BIA's filing deadline to be mandatory but not jurisdictional. *See Liadov v. Mukasey*, 518 F.3d 1003, 1008 n.4 (8th Cir. 2008) (agreeing with the Tenth Circuit that "the time limit in 8 C.F.R. § 1003.38(b) is mandatory but not jurisdictional"); *Huerta v. Gonzales*, 443 F.3d 753, 756 (10th Cir. 2006) (holding that the filing deadline is a "claim-processing rule," and is thus mandatory but not jurisdictional).

[39]*Gonzalez-Julio v. INS*, 34 F.3d 820 (9th Cir. 1994).

[40]*Id.* at 823.

[41]*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

[42]*Gonzalez-Julio*, 34 F.3d at 823 (quoting *Logan*, 455 U.S. at 437).

The BIA argues that the alien should "file as far in advance of the deadline as possible."[43] That answer is unsatisfactory because a person with fundamental interests at stake is entitled to certainty about when he must ask to be heard in order to get a hearing.

Nor is thirty days so long a time that a few days here or there should not matter to the alien. The alien owns the thirty days, and all of them are likely to be essential. Aliens' appeals are not, by and large, handled by giant spare-no-expense law firms, in which a partner can command a senior associate who can command a junior associate to have something on his desk by 9:00 A.M. Monday without fail, and then fly a courier to Washington D.C. to assure timely filing in Falls Church.[44] The record here describes the details of a typical case. The pro se alien had lost his case before the IJ just before Christmas and came to a lawyer's office during her first appointment slot right after New Year's. The lawyer could not do anything without listening to the Immigration Court's tapes, and the alien needed a few days to raise the money for her retainer. By the following Monday, the money had been obtained and by Thursday, counsel drove the 45 miles to the court to listen to the tapes. Over the next 48 hours, counsel researched the applicable law necessary to formulate the notice of appeal and prepared the notice. Monday was a holiday, so counsel drove to the post office herself first thing in the morning Tuesday, and sent the papers express mail for guaranteed delivery Wednesday, when they were due. Both client and lawyer acted with reasonable diligence to comply with the filing deadline. As is common, all thirty days were reasonably necessary for the task (too short, actually—the tapes ran longer than the time the Immigration Court had for counsel to listen

---

[43]*Liadov*, 23 I. & N. Dec. at 992.

[44]*But see Maples v. Allen*, 586 F.3d 879, 884, 886-90 (11th Cir. 2009) (denying relief to prisoner in part because his lawyers, from the large New York firm Sullivan & Cromwell, caused his notice of appeal to be filed late).

to them on Thursday). An appellant who has deposited his notice of appeal to the BIA with the U.S. Postal Service or an approved carrier the day before it is due, for guaranteed next-day delivery, has done all that reasonable diligence requires. Requiring some uncertain earlier date would deprive him both of notice of the due date and of time often necessary to perform the necessary work.

The Board tosses an additional red herring across the path to justice by arguing it does not have a "mailbox rule." This argument is irrelevant, because petitioner has never argued that it does. A "mailbox rule" means that an act is deemed accomplished when the required submission is mailed as opposed to when it is received or filed. For example, a "mailbox rule" lets us comply with the April 15 due date for tax returns by mailing them that day,[45] and lets attorneys comply with motion and opposition deadlines by service, that is, mailing, rather than receipt or filing.[46] In this case, Irigoyen-Briones's lawyer does not contend that the notice of appeal should be deemed filed when she sent it, but rather that her client ought to be relieved from lateness because his attorney sent it such that in the absence of an extraordinary delay by the carrier, it would have been received on time.

[7] In *Gonzales-Julio*, more than fifteen years ago, we noted that the BIA could obviate much of the problem by allowing filing within a reasonable distance of the alien's residence instead of limiting it to Falls Church, Virginia. Now, fifteen years later, the government's justification for requiring physical filing in Falls Church has become technologically obsolete. The Board could easily adopt electronic filing.[47]

---

[45]26 U.S.C.A. § 7502(a).

[46]Fed. R. Civ. P. 5(b)(2)(C).

[47]Federal courts, no seekers of novelty themselves, generally provide for electronic case filing. *See, e.g.*, 9th Cir. Admin. Order Re Electronic Filing (Nov.10, 2008); 3d Cir. R. 25.1; 4th Cir. Admin. Order 08-01 (Apr. 1, 2008); 6th Cir. Admin. Order 08-01 (May 7, 2008); 8th Cir. R. 25A; 10th Cir. Gen. Order 95-01 (Mar. 18, 2009); D.C. Cir. Admin. Order (May 15, 2009). The Federal Rules of Civil Procedure expressly address electronic filing. Fed. R. Civ. P. 5(d)(3).

Were it to do so, the occasions for exercising discretion regarding late filing would become far rarer.

Doubtless electronic filing saves attorneys in places like Alaska, or for that matter most of the rest of the country, and their clients from the risk of arbitrary horrendous consequences due to chance post office and delivery delays. It was not Irigoyen-Briones's error that made the Postal Service delay delivery of his package, but the consequence of that late delivery fell on him, not the post office, and the catastrophic consequence was easily avoidable by people at the agency. Just as we have for many decades assumed the availability of telephones, automobiles, and airplanes, we ought now to assume the availability of email and the internet when we assess the reasonableness of government action.

## III.    Conclusion

With respect to this petition, our power is limited to correcting the BIA's "misconstruction of the jurisdictional nature of its own filing deadline."[48] Since the agency erred as a matter of law in concluding that it lacked jurisdiction, we must under *Ventura*[49] remand to the agency to permit it fully to reconsider whether, under the circumstances presented, it will hear the appeal from the IJ's decision in this case.

We are sympathetic to the agency's need to assure timely filing by litigants by strict enforcement of deadlines. Nevertheless, "strict" does not include "unreasonable." Any overloaded adjudicative entity may be tempted to avoid exercising judgment, seeking refuge from its caseload by arbitrarily enforcing claim-processing rules. There would be nothing wrong with a rigid filing deadline if it could be complied with from anywhere in this huge country with certainty, but rigid-

---

[48]*Oh*, 406 F.3d at 613.

[49]*INS v. Ventura*, 537 U.S. 12, 14 (2002).

ity is fundamentally unfair if people cannot assure their own compliance.[50]

To protect its important interest in proceeding expeditiously with these cases, yet avoid subjecting aliens to the risk of losing their appeals due to bad weather or delivery service error, all the Board need do is what courts and private companies routinely do: allow people to send their notices of appeal over the internet. It is a cruel irony that the Board distributes the manual that lawyers are supposed to use as guidance on the internet,[51] yet pretends the internet does not exist when it comes to receiving papers. The Board's claim that it lacked jurisdiction to consider Irigoyen-Briones's appeal is an invalid excuse.

The **PETITION IS GRANTED**, the Board's decision **VACATED**, and the case **REMANDED**.

---

[50]*Cf. Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

[51]*See* Board of Immigration Appeals Practice Manual, *available at* http://www.usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm.