# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GUILLERMO IRIGOYEN-BRIONES, aka
Jose Vega-Ramirez,
                    *Petitioner,*

            v.

ERIC H. HOLDER, JR., Attorney
General,
                    *Respondent.*

No. 07-71806

Agency No.
A096-384-113

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2009—San Francisco, California

Filed September 29, 2009

Before: Eugene E. Siler, Jr.,* Andrew J. Kleinfeld and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Kleinfeld

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

13971

## COUNSEL

Charles E. Nichol, Law Offices of Charles E. Nichol, San Francisco, California, for the petitioner.

Charles Canter & Ronald E. LeFevre, U.S. Department of Justice, Washington, DC, for the respondent.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Guillermo Irigoyen-Briones (Irigoyen-Briones) petitions for review of the Board of Immigration Appeals' (BIA) denial of his motion to reconsider its rejection of his appeal of an

Immigration Judge's (IJ) decision as being untimely filed. Irigoyen-Briones sought to excuse the late filing as having been caused by an overnight delivery service's failure to deliver the notice until the day after the BIA's thirty-day deadline. He argues that the BIA's determination that it lacks jurisdiction to extend the appeal filing deadline conflicts with this court's decision in *Oh v. Gonzales*, 406 F.3d 611, 613 (9th Cir. 2005), which held on similar facts that the deadline is "subject to exceptions in 'rare circumstances.' " In response, the Attorney General asserts that the BIA's subsequent decision in *In re Liadov*, 23 I&N Dec. 990 (BIA 2006), which expressly addressed and rejected the holding in *Oh*, is the governing authority. Because 8 C.F.R. § 1003.38(b) is ambiguous regarding the BIA's jurisdiction to consider late filings, and because the BIA's interpretation in *Liadov* is not plainly erroneous or inconsistent with the language of the regulation, we hold that Supreme Court precedent requires us to give deference to the BIA's construction of 8 C.F.R. § 1003.38(b), and we affirm the BIA's denial of Irigoyen-Briones' motion to reconsider its rejection of his appeal of the IJ's decision as being untimely filed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Removability Charges and IJ Proceedings

Irigoyen-Briones, a native and citizen of Mexico, entered the United States illegally in 1991. In November 2003, United States Immigration and Customs Enforcement commenced proceedings against him by filing a Notice to Appear (NTA), charging him with removability as an alien present in the United States without being admitted or paroled, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).

At a hearing before an IJ in December 2003, Irigoyen-Briones admitted the allegations in the NTA and conceded removability. In October 2004, he filed an application for can-

cellation of removal or, in the alternative, for voluntary departure. The IJ denied these requests in December 2006.

## B.  BIA Proceedings

### 1.  Initial Appeal

On January 18, 2007, Irigoyen-Briones' counsel filed a Notice of Appeal (NOA) with the BIA. The BIA dismissed the appeal as untimely because, pursuant to 8 C.F.R. § 1003.38(b), the NOA was due one day earlier, on January 17, 2007. The BIA observed that in light of the jurisdictional dismissal, if either party "wish[ed] to file a motion to reconsider challenging the finding that the appeal was untimely, [it had to] file [the] motion with the Board. However, if [either party was] challenging any other finding or seek[ing] to reopen [the] case, [it had to] file [the] motion with the Immigration Court."

### 2.  Motion for Reconsideration

In March 2007, Irigoyen-Briones filed a motion for reconsideration or, in the alternative, for the BIA to certify the appeal to itself. He argued that the BIA had jurisdiction over his untimely appeal in light of the "rare circumstances" exception explained in *Oh v. Gonzales*, 406 F.3d 611, and *Zhong Guang Sun v. U.S. Department of Justice*, 421 F.3d 105 (2d Cir. 2005).

In a supporting declaration, Irigoyen-Briones' counsel stated that after he retained her on January 8, 2007, she made an appointment with the Immigration Court on January 11, 2007, to listen to the tape recordings of the IJ proceedings. "Upon opening the envelope containing the tapes, [she] was surprised to find that there were (at least) five tapes," which included a "rather long" oral decision by the IJ, and needed to "research a few legal issues before [she] could write the Notice of Appeal with enough specificity so that it would not

be summarily dismissed." She completed this additional research and prepared the NOA by the end of January 13, 2007, and was aware that there would be no mail service on January 14 or 15, 2007, because the 14th was a Sunday and the 15th was Dr. Martin Luther King, Jr. Day.

Counsel's declaration further states that, on January 16, 2007, she mailed the NOA via the United States Postal Service's (USPS) Express Mail delivery service, which guaranteed delivery of the NOA to the BIA on the due date of January 17, 2007. She notes that although the cut-off time for a next-day delivery to the BIA was 4:00 p.m., she delivered the NOA to the USPS station at 10:40 a.m. to ensure that there was ample time for the delivery, and that in her over ten years of experience using USPS for overnight deliveries, she had never before had a document delivered late. She also states that "USPS, through its agent with whom [she] spoke by telephone, admits that it failed in delivering the Express Mail package as guaranteed and indicates that they will provide a refund upon request at any post office."

In denying Irigoyen-Briones' motion for reconsideration, the BIA first observed that rather than establishing an "error of fact or law in the Board's prior decision," he instead argued that "the Board should make an exception to the filing deadline, or at the very least, accept the appeal on certification." Next, the BIA noted counsel's argument that "unlike the respondent in [*In re*] *Liadov*, 23 I&N Dec. 990 (BIA 2006), she did not wait until the last possible moment to prepare the brief, but worked diligently for several days to prepare [it], even traveling to the Immigration Court in San Francisco to listen to the tape of the Immigration Judge's decision." The BIA then concluded:

> The Board does not observe the mailbox rule (accepting the mailing date as the filing date). A Notice of Appeal from the decision of an Immigration Judge must be filed at the Board no later than

30 calendar days after the Immigration Judge renders an oral decision or mails a written decision. Receipt by any other entity—be it the U.S. Postal Service, commercial courier, or institution of detention—does not suffice. The regulations set strict deadlines for the filing of an appeal, and the Board does not have the authority to extend the time in which to file a Notice of Appeal. *See* 8 C.F.R. § 1003.38(b). Short delays in delivery are to be expected, and they do not warrant consideration of an untimely appeal on certification. *See* [*In re*] *Liadov.*

This petition for review followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's denial of a motion to reconsider for abuse of discretion, "uphold[ing] the Board's ruling '[u]nless [it] acted arbitrarily, irrationally, or contrary to law.' " *Lara-Torres v. Ashcroft*, 383 F.3d 968, 972 (9th Cir. 2004) (quoting *Lo v. Ashcroft*, 341 F.3d 934, 937 (9th Cir. 2003)) (alterations in original). "[T]he BIA's determination of purely legal questions, including the BIA's interpretation of the Immigration and Nationality Act," is reviewed de novo. *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir. 1999). We review factual findings for substantial evidence. *Mejia-Paiz v. INS*, 111 F.3d 720, 722 (9th Cir. 1997). "Under the substantial evidence standard, 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.' " *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## DISCUSSION

Irigoyen-Briones argues that the BIA's determination that it lacks authority to extend an appeal filing deadline under 8 C.F.R. § 1003.38(b) contravenes this court's decision in *Oh v.*

*Gonzales*, 406 F.3d 611, thereby requiring remand to allow the agency to exercise its discretion whether to accept his late-arriving NOA as a "rare circumstance."[1]

A.  *Oh*

*In Oh*, the petitioner similarly appealed the BIA's denial of her motion to reconsider its prior decision dismissing her appeal of an IJ's order as untimely filed, arguing that the BIA should have "excuse[d] the late filing as having been caused by an overnight delivery service's failure to deliver the notice until well past the BIA's 30-day filing deadline." 406 F.3d at 612. The IJ had issued his decision, and thereby triggered the thirty-day deadline, on January 10, 2003, and the petitioner had mailed her NOA by overnight mail on February 4, 2003. *Id.* The carrier, however, failed to deliver the NOA until February 24, 2003. *Id.* In denying the petitioner's motion for reconsideration, the BIA, as in the present case, ruled that it "does not have the authority to extend the time in which to file a Notice of Appeal" under 8 C.F.R. § 1003.38(b). *Id.* at 613.

The *Oh* court disagreed with the BIA's conclusion and remanded. *Id.* at 613-14. In doing so, the court noted the Attorney General's argument, also advanced here, that the BIA lacks authority to extend the time in which to file an

---

[1]In the "Introduction" to his brief, Irigoyen-Briones states: "As with the petitioner in *Oh v. Gonzales*, petitioner in the present [case] argues that 'the BIA's [error] in denying h[is] motion to reconsider raises both abuse of discretion and *due process* arguments.' " (Emphasis added.) Nowhere else in the brief, however, does Irigoyen-Briones mention a due process claim or offer any authority or arguments in support of such a claim. As a result, he has waived the issue. *Cf. Ghahremani v. Gonzales*, 498 F.3d 993, 997 (9th Cir. 2007) (" '[A]n issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived.' " (quoting *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996))). Moreover, *Oh* "d[id] not reach [the petitioner]'s due process arguments," 406 F.3d at 612 n.1, and therefore does not support a due process argument in any event.

appeal based on *Da Cruz v. INS*, 4 F.3d 721, 722 (9th Cir. 1993), which held that "[t]he time limit for filing an appeal [to the BIA] is mandatory and jurisdictional." The *Oh* court distinguished this precedent, observing that "as the authority *Da Cruz* cites for this proposition states, '[d]espite the note of finality sounded by this principle, it is not inflexible.' " *Oh*, 406 F.3d at 613 (quoting *Hernandez-Rivera v. INS*, 630 F.2d 1352, 1354 (9th Cir. 1980)).**²** The *Oh* court also found it significant that "the BIA's own Practice Manual . . . explicitly encourages aliens to use overnight delivery services to ensure prompt delivery. Although warning that 'delivery delays do not affect existing deadlines, nor does the Board excuse untimeliness due to such delays,' the Manual itself expressly acknowledges that in 'rare circumstances' the BIA may excuse late filings." *Id.* (quoting BIA Practice Manual, Ch. 3(b), p. 28 (rev. 9/25/02)).

**[1]** Based on this reasoning, the *Oh* court held that "[t]he BIA's deadline is thus subject to exceptions in 'rare circumstances,' even when the notice of appeal does not actually arrive before the deadline." *Id.* (citing *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1188 (9th Cir. 2001) (en banc), for the proposition that "[i]f a time limit is jurisdictional, it is not subject to the defenses of waiver, equitable tolling, or equitable estoppel, *although there may still be exceptions based on unique circumstances*" (emphasis added) (citation and internal quotation marks omitted)). The court then applied this holding, stating:

> On its face, Oh's use of one of the overnight delivery services the BIA recommends (Airborne Express is identified by name) would appear to qualify her for relief from late filing as a unique or rare

---

**²***Hernandez-Rivera* relied entirely on *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962), and *Thompson v. INS*, 375 U.S. 384 (1964), both of which the Supreme Court recently overruled in *Bowles v. Russell*, 127 S. Ct. 2360, 2366 (2007).

circumstance—or at least to be considered for such relief, with some reasoned explanation should the BIA reject her proffered excuse. As the case comes to us, Oh has a colorable claim that she was misled into relying on the recommended overnight delivery service, and on the "rare circumstance" exception to remedy what appears to be an extraordinary lapse on Airborne's part. The BIA's refusal to reconsider her claim in these circumstances, based on its erroneous assumption that it lacked authority to do so, was an abuse of discretion.

*Id.* Accordingly, the court "remand[ed] to allow the BIA to exercise its discretion as to whether to accept Oh's late-arriving notice of appeal as a 'rare circumstance.' "³ *Id.* at 614.

## B.   *In re Liadov*

**[2]** A year after the *Oh* decision, the BIA expressly addressed and disagreed with it in *In re Liadov*, 23 I&N Dec. 990 (BIA 2006). Specifically, the BIA stated:

> The regulations governing appeals to the Board, the statute governing administrative appeals in asylum cases, and the authority of the Supreme Court all

---

³In *Zhong Guang Sun v. U.S. Department of Justice*, 421 F.3d 105, 109-11 (2d Cir. 2005), the Second Circuit agreed with the *Oh* court that an overnight delivery service's failure to timely deliver a NOA can constitute an extraordinary circumstance excusing a petitioner's failure to comply with the thirty-day limit for filing an appeal. The petitioner in *Zhong Guang Sun* placed his NOA with an overnight delivery service one day before the deadline for filing an appeal. *Id.* at 106. The Second Circuit stated that a petitioner's use of an overnight delivery service is recognized as a way of insuring timely delivery and "strongly suggests to us that the failure of such an effort to achieve timely filing may well, indeed, fall within the realm of the 'extraordinary.' " *Id.* at 111. As a result, the Second Circuit, like the *Oh* court, remanded the case for the BIA to reconsider the issue. *Id.*

require that filing deadlines be strictly enforced and thus that appeals be timely filed. Neither the statute nor the regulations grant us the authority to extend the time for filing appeals. We therefore do not agree with the court's suggestion in *Oh v. Gonzales . . .* that we have the authority to extend the appeal time.

*Liadov*, 23 I&N Dec. at 993. Importantly, however, the BIA also held that "[w]here a case presents exceptional circumstances, the Board may certify a case to itself under 8 C.F.R. § 1003.1(c)[.]"[4] *Id.*

### C.   The BIA's Reasonable Interpretation of Its Regulations in *Liadov* is Entitled to Deference

[3] Although Irigoyen-Briones asserts that the BIA's reading of 8 C.F.R. § 1003.38(b) in *Liadov* is foreclosed by this court's conflicting construction in *Oh*, Supreme Court precedent requires us to give deference to the BIA's interpretation in this instance. Under *Auer v. Robbins*, 519 U.S. 452 (1997), an agency's interpretation of its own regulation may be entitled to substantial deference from a reviewing court. *See Gonzales v. Oregon*, 546 U.S. 243, 255 (2006). To determine whether *Auer* deference applies, we conduct a two-step inquiry. First, "*Auer* deference is warranted only when the language of the regulation is ambiguous"; otherwise, "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto*

---

[4] 8 C.F.R. § 1003.1(c) states:

Jurisdiction by certification. The Commissioner, or any duly authorized officer of the Service, an Immigration Judge, or the Board may in any case arising under paragraph (b) of this section certify such case to the Board. The Board in its discretion may review any such case by certification without regard to the provisions of [8 C.F.R.] § 1003.7 if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity request oral argument and to submit a brief.

a new regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). Second, if the regulation is ambiguous, then the agency's "interpretation of it is . . . controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (citation and internal quotation marks omitted). "Under this standard, we defer to the agency's interpretation of its regulation unless an " 'alternative reading is *compelled* by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.' " *Bassiri v. Xerox Corp.*, 463 F.3d 927, 931 (9th Cir. 2006) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (emphasis added) (alteration in original)).

**[4]** Applying these principles here, we hold that the plain language of 8 C.F.R. § 1003.38(b) is ambiguous as to whether the BIA may extend the filing deadline. The provision states, in relevant part:

The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge . . . shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision. If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day.

8 C.F.R. § 1003.38(b). As the *Oh* court noted, this language "says nothing about the BIA's jurisdiction to consider late filings." 406 F.3d at 613 n.4. Nor, however, does it say anything about the BIA's authority to review such filings in "rare circumstances." Given the regulation's silence on the issue, neither construction is clearly foreclosed.

**[5]** For the following reasons, we also hold that the BIA's interpretation of 8 C.F.R. § 1003.38(b) in *Liadov* is not "plainly erroneous or inconsistent with the regulation." *See*

*Auer*, 519 U.S. at 461 (citation and internal quotation marks omitted). First, the BIA's interpretation conforms to the wording of the relevant regulations. The word "shall" in 8 C.F.R. § 1003.38(b) indicates a mandatory time frame, and the rest of the provision further indicates only one exception for extensions: "If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day." *Id.* At the same time, related provision 8 C.F.R. § 1003.3(c) states that "[t]he date of filing of the Notice of Appeal . . . shall be the *date the Notice is received by the Board*." (Emphasis added.) Based on the plain language of the regulations, therefore, the BIA in *Liadov* reasonably concluded that neither a "mailbox" rule—i.e., accepting the mailing date as the filing date—nor a "rare circumstances" exception for late filings, applies.

**[6]** Second, as explained in *Liadov*, the BIA's interpretation conforms to the wording of the BIA's own Practice Manual:

> The *Board of Immigration Appeals Practice Manual* ("*Practice Manual*") . . ., which also addresses the issue of filing appeals, emphasizes the importance of timely filings. It clearly states that an appeal or motion is not deemed filed until it is received by the Board and that the Board does not observe the "mailbox" rule. *See* [Practice Manual] § 3.1(a)(i), at 31 (July 30, 2004). . . .
>
> Moreover, in two places the *Practice Manual* specifically cautions that use of an overnight delivery service does not mean that failing to meet filing deadlines will be excused. According to § 3.1(a)(iv), "the failure of a courier or overnight delivery service does not excuse parties from meeting filing deadlines." [Practice Manual] § 3.1(a)(iv), at 32. In addition, § 3.1(b)(iv) provides, in pertinent part, as follows:

> **Delays in delivery.**—Postal or delivery delays do not affect existing deadlines, nor does the Board excuse untimeliness due to such delays, except in rare circumstances. Parties should anticipate all Post Office and courier delays, whether the filing is made through first class mail, priority mail, or any overnight or other guaranteed delivery service.

*Liadov*, 23 I&N Dec. at 991-92. It is true, as the *Oh* court noted, that the Practice Manual "acknowledges that in 'rare circumstances' the BIA may excuse late filings." 406 F.3d at 613. However, given that this acknowledgment is consistent with the BIA's conclusion in *Liadov* that it may still take untimely cases in "rare" or "extraordinary" circumstances pursuant to its discretionary *certification* authority under 8 C.F.R. § 1003.1(c), 23 I&N Dec. at 991, it does not compel an alternative reading of 8 C.F.R. § 1003.38(b) or indicate that the BIA's interpretation is plainly erroneous.

**[7]** Third, the BIA's construction sensibly conforms to the purpose of the regulations. As noted in *Liadov*, "[m]eaningful filing deadlines are as critical to the smooth and fair administration of the Board as they are to the courts, particularly given the extraordinary volume of appeals, motions, and other filings that must be efficiently processed, tracked, and adjudicated." 23 I&N Dec. at 992. Indeed, in 1996, recognizing the importance of both enforcing such deadlines and simultaneously allowing the parties sufficient time in which to file appeals, the Board by regulation lengthened the period for filing administrative appeals from ten days to thirty days. *Id.* (citing *Executive Office for Immigration Review: Motions and Appeals in Immigration Proceedings*, 61 Fed. Reg. 18,900, 18,908 (Apr. 29, 1996) (codified at 8 C.F.R. § 3.38(b) and subsequently recodified at 8 C.F.R. § 1003.38(b))). The BIA in *Liadov* reasonably found that "this is a fair and generous filing period and one that the parties must take seriously,"

observing that "[t]he filing time was not extended to simply 'push the window' of last-minute filings 20 days forward." *Id.*

Fourth, the BIA's interpretation comports with the Supreme Court's approval of the adoption of strict filing deadlines in other contexts. In *United States v. Locke*, for example, the Court stated:

> The notion that a filing deadline can be complied with by filing sometime after the deadline falls due is, to say the least, a surprising notion, and it is a notion without limiting principle. If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. "Any less rigid standard would risk encouraging a lax attitude toward filing dates[.]" A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.

471 U.S. 84, 101 (1985) (quoting *United States v. Boyle*, 469 U.S. 241, 249 (1985)). In addition, the Court recently clarified that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and that "[b]ecause th[e] Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Finally, as the Eighth Circuit noted in similarly deferring to the BIA's interpretation in *Liadov* as a "permissible interpre-

tation" of 8 C.F.R. § 1003.38(b), "[t]he BIA has declared for more than fifty years that the regulation prescribing the time within which an administrative appeal must be filed . . . is mandatory and may not be extended by the BIA." *Liadov v. Mukasey*, 518 F.3d 1003, 1009 (8th Cir. 2008); *see, e.g.*, *In re Dirphys*, 3 I&N Dec. 223, 224 (BIA 1948) ("There is no provision in the pertinent regulation . . . which gives . . . this Board . . . power to extend time within which an appeal must be filed."); *In re G—Z—*, 5 I&N Dec. 295, 295 (BIA 1953) ("We rule that under the applicable regulations, . . . there is no authority to extend the time for filing an appeal."); *In re Escobar*, 18 I&N Dec. 412, 413 (BIA 1983) (acknowledging that "failure to [timely file an appeal] results in the decision becoming administratively final" such that the BIA "lacks jurisdiction to hear the appeal"). Indeed, "[c]onfirming this longstanding agency rule, the Attorney General ruled in 2002 that '[t]his deadline is mandatory and jurisdictional.' " *Liadov v. Mukasey*, 518 F.3d at 1007 (quoting *In re Jean*, 23 I&N Dec. 373, 378 (BIA 2002) (alterations in original)).

**[8]** Accordingly, because 8 C.F.R. § 1003.38(b) is ambiguous regarding the BIA's jurisdiction to consider late filings, and because the BIA's interpretation in *Liadov* is not plainly erroneous or inconsistent with the language of the regulation, we must give *Auer* deference to the BIA's construction that the agency lacks "authority to extend the appeal time" under 8 C.F.R. § 1003.38(b), but may "certify a case to itself" where it presents "rare" and "exceptional" circumstances under 8 C.F.R. § 1003.1(c).[5] *See Liadov*, 23 I&N Dec. at 993. We also

---

[5]Irigoyen-Briones challenges only the BIA's holding that it lacks jurisdiction to extend an appeal filing deadline under 8 C.F.R. § 1003.38(b); he does not challenge the BIA's discretionary decision that "[s]hort delays in delivery are to be expected, and they do not warrant consideration of an untimely appeal on certification" under 8 C.F.R. § 1003.1(c). As a result, he has waived that issue on appeal. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988) (noting that "[i]t is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned"). Moreover, even if Irigoyen-Briones had not waived the certification issue, we lack jurisdiction to consider it under 8 U.S.C. § 1252(a)(2)(D).

hold that, under *Auer* and its progeny, to the extent *Oh* was grounded in the ambiguous language of 8 C.F.R. § 1003.38(b), the BIA's reasonable discretionary interpretation of 8 C.F.R. § 1003.38(b) in *Liadov* has "effectively overruled" the prior, contrary holding in *Oh*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (stating that although a three-judge panel is usually bound by the opinion of a prior three-judge panel, this court has recognized an exception where "the reasoning or theory of [this court's] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," such that the prior three-judge panel's decision has been "effectively overruled"); *cf. Gonzalez v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1236 n.7 (9th Cir. 2007) (citing *Miller*, 335 F.3d at 893, for the proposition that "[t]he Supreme Court's opinions in *Chevron* [*U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984),] and *[Nat'l Cable & Telecomm. Ass'n v.] Brand X* [*Internet Servs.*, 545 U.S. 967 (2005),] together hold that to the extent that *[Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004)] was grounded in the ambiguous language of [a provision of the Immigration and Nationality Act], the BIA's reasonable discretionary construction of the statute in [*In re Torres-Garcia*, 23 I&N Dec. 866 (BIA 2006)] has 'effectively overruled' contrary holdings in [*Perez-Gonzalez*]").

## CONCLUSION

**[9]** We conclude that, based on Supreme Court precedent, we must defer to the BIA's reasonable interpretation in *Liadov* that the agency lacks authority to extend the thirty-day deadline for filing an appeal. As a result, the BIA did not abuse its discretion in denying Irigoyen-Briones' motion to reconsider its rejection of his appeal of the IJ's decision as being untimely filed.

**AFFIRMED.**

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent. I am filing the same dissent in *Irigoyen-Briones v. Holder*, No. 07-71806 and *Turcios v. Holder*, No. 05-72258, because these two cases raise identical legal issues, in materially similar factual and legal contexts. The issue in both cases is whether the Board of Immigration Appeals ought to have considered an appeal that was sent in time to arrive before the deadline, and was guaranteed by the shipper to arrive in time, but got stamped in at Board head-quarters the day after the due date. The merits are not at issue before us, just lateness. The issue of lateness affects innumer-able cases, and it is a matter of chance whether an alien attempting to appeal falls into this pit.

In *Turcios*, the alien's lawyer attached to his motion for reconsideration a letter from FedEx Express. FedEx says that although "the shipment was due for delivery by 10:30 a.m. on December 23 . . . severe weather conditions caused an exten-sive and lengthy disruption of our transportation system, and thus the parcel did not reach its destination on the anticipated date. Delivery was completed on December 27 at 10:00 a.m."

In *Irigoyen-Briones*, the alien's lawyer personally brought the notice of appeal to the post office first thing in the morn-ing for guaranteed express mail delivery the next day, which would have been timely. However, for the first time in over ten years, Irigoyen-Briones's attorney was let down by late Express Mail delivery. A clerk told her that some sort of error appeared to have been made by the post office at the airport in Virginia. The post office error caused the notice of appeal to get to the BIA a day late.[1]

---

[1] With the drollness characteristic of these sorts of errors, FedEx said that it regretted "any inconvenience," and the United States Postal Service offered to refund the postage counsel had paid for guaranteed next day delivery.

Although the BIA interprets the statutes and regulations as requiring that filing deadlines be strictly enforced, the BIA also acknowledges that it has the authority to relieve litigants from the consequences of late filing for "exceptional circumstances."[2] The BIA, in both cases, followed its own panel decision in *In re Liadov*,[3] which held that "short delays by overnight delivery services" are not "extraordinary," so "appellants must take such possibilities into account and act accordingly."[4] The only place notices of appeal can be filed is Falls Church, Virginia,[5] so evidently "act accordingly" means fly to one of the D.C. area airports or send the notice at some unknown and unpredictable time prior to the deadline so that the BIA would think the delivery service delay "extraordinary." The Board holds that even though it lacks authority to extend the thirty day deadline, it does have authority to "certify a case to itself under 8 C.F.R. 1003.1(c)" "where a case presents exceptional circumstances."[6]

Oddly, the BIA does not provide for any means of filing notices of appeal other than showing up in Falls Church, Virginia—not a trip most aliens could afford to pay their lawyers to make from outside the Beltway—or sending the papers by post office or private delivery service. Federal courts, no seekers of novelty themselves, generally provide for electronic case filing.[7] The Federal Rules of Civil Proce-

---

[2]*See* 8 C.F.R. § 1003.1(c); *In re Liadov*, 23 I&N Dec. 990 (BIA 2006).

[3]23 I&N Dec. 990 (BIA 2006).

[4]23 I&N Dec. at 993.

[5]*See* Executive Office of Immigration Review, U.S. Dep't of Justice, *Form EOIR-26*, *1 (2008), http://www.usdoj.gov/eoir/eoirforms/eoir26.pdf.

[6]*In re Liadov*, 23 I&N Dec. 990, 993 (BIA 2006).

[7]*See, e.g.*, 9th Cir. Admin. Order Re Electronic Filing (Nov. 10, 2008); 3d Cir. R. 25.1; 4th Cir. Admin. Order 08-01 (Apr. 1, 2008); 6th Cir. Admin. Order 08-01 (May 7, 2008); 8th Cir. R. 25A; 10th Cir. Gen. Order 95-01 (Mar. 18, 2009); D.C. Cir. Admin. Order (May 15, 2009); D. Alaska R. 5.3; C.D. Cal. Gen. Order 08-02 (Feb. 7, 2008); E.D. Cal. R. 5-133; N.D. Cal. Gen. Order 45 (Nov. 18, 2004); S.D. Cal. R. 5.4; D. Haw. Gen. Order (May 1, 2006); D. Idaho R. 5.1; D. Mont. R. 5.1; D. Or. R. 100.3; E.D. Wash. R. 5.1; W.D. Wash. R. 5.

dure expressly address electronic filing.[8] Doubtless electronic filing saves attorneys in places like Alaska, or for that matter most of the rest of the country, a great deal of money on ulcer medicine, and more important, saves their clients from the risk of arbitrary horrendous consequences due to chance post office and delivery delays. It was an Act of God that weather prevented timely delivery of Turcios's FedEx package, but the consequence of that late delivery was easily avoidable by people at the agency. Just as we have for many decades assumed the availability of telephones, automobiles, and airplanes, we ought to be able to assume the availability of email over the internet.

The Board has tossed a couple of red herrings across the path to justice. First, it says that the thirty day deadline is jurisdictional and it lacks authority to extend it. But as the Board says in *Liadov*, it nevertheless retains authority to grant relief from late filing in "exceptional" or "extraordinary" circumstances. Second, the Board says it does not have a "mailbox rule." This argument is irrelevant, because no one argues that it does. A "mailbox rule" means that an act is deemed accomplished when the required submission is mailed as opposed to when it is received or filed. For example, a "mailbox rule" lets us comply with the April 15 due date for tax returns by mailing them that day,[9] and lets attorneys comply with motion and opposition deadlines by service, that is, mailing, rather than receipt or filing.[10] The lawyers for Turcios and Iriguyen-Briones contend, not that the notices of appeal should be deemed filed when they sent them, but rather that they ought to be relieved from lateness because they sent them such that ordinarily they would have been received timely.

---

[8]Fed. R. Civ. P. 5(d)(3).

[9]26 U.S.C.A. § 7502(a).

[10]Fed. R. Civ. P. 5(b)(C).

*Liadov*, on which the Board relies in both these cases, itself relies heavily on the Board's own Practice Manual, for which it gives an internet citation.[11] The disclaimer at section 1.1(c) of the manual says it does not carry the force of law or regulation and should not be relied on, so *Auer* and *Chevron* deference to it would be inappropriate. The Manual says that "[b]ecause filings are date-stamped upon arrival at the Board, the Board strongly recommends that parties file as far in advance of the deadline as possible, and, whenever possible, use overnight delivery couriers, (such as United Parcel Service, Federal Express, Airborne Express, DHL) to assure timely receipt."[12] We said in *Oh v. Gonzales*[13] that "use of one of the overnight delivery services the BIA expressly recommends . . . would appear to qualify [petitioners] for relief from late filing as a unique or rare circumstance—or at least to be considered for such relief, with some reasoned explanation should the BIA reject [petitioners] proffered excuse." Here, the BIA simply brushed aside Turcios's and Irigoyen-Briones's explanations for the lateness of their notices of appeal and deemed them untimely filed, even though both provided persuasive evidence that they had acted reasonably to cause timely filing.

Once we get past the red herrings, the remaining question is whether the Board may, in interpreting the statute under which it operates and the Constitution, refuse to hear appeals where the aliens have done what is reasonably necessary, using the carriers the Board recommends, to assure that their appeals have been filed on time, and through no fault of their own, the papers are stamped in late. In my view, the principle of constitutional avoidance[14] requires that the statute and regu-

---

[11]Board of Immigration Appeals Practice Manual, http://www.usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm

[12]BIA Prac. Man. § 3.1(b).

[13]406 F.3d 611, 613 (9th Cir. 2005).

[14]*See Public Citizen v. United States Department of Justice*, 491 U.S. 440, 466 (1989) ("It has long been an axiom of statutory interpretation that

lation be construed if possible to require that such notices of appeal be deemed timely. In the absence of such a construction, the Board's rigid position denies aliens due process of law.

As the majority concedes, we held in *Oh v. Gonzales*[15] that the time limit for appeal to the BIA was subject to discretionary relief. We further held that its construction of its filing deadline—limiting relief to *sua sponte* reconsideration in exceptional circumstances—was an error of law. To my mind, it stretches deference to administrative agencies too far to hold, as the majority does, that by insisting on its error, *Liadov* makes the error good law. We defer only to reasonable constructions. *Liadov* is not a reasonable construction by the BIA of its regulations, because this construction deprives aliens who attempt to appeal of due process of law.

The Second Circuit in *Zhong Guang Sun v. U.S. Dep't of Justice* joins our view in *Oh* and cites language consistent with our view from the Sixth, Seventh, and Eighth Circuits.[16] Where the petition came in several days late because of an Airborne Express error, the Second Circuit holds that the BIA did not lack jurisdiction, and remands because failure of timely delivery by a courier service designated in the BIA's

---

where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.") (quotation omitted).

[15]406 F.3d 611 (9th Cir. 2005).

[16]421 F.3d 105, 111 (2d Cir. 2005). The Eighth Circuit has now upheld the Board's construction against a due process challenge. *Liadov v. Mukasey*, 518 F.3d 1003, 1012 (8th Cir. 2008). Other circuits have as well, but in decisions predating the Supreme Court's clarification that non-statutory time limits are not jurisdictional. *Bowles v. Russell*, 551 U.S. 205 (2007); *see Liadov*, 518 F.3d at 1008-09 & n.4; *Khan v. U.S. DOJ*, 494 F.3d 255, 258-59 & n.4 (2d Cir. 2007) (concluding in light of *Bowles* that the regulatory time limit was not jurisdictional).

practice manual "may well, indeed, fall within the realm of the 'extraordinary' if not the 'unique.' "[17]

The agency's interpretation conflicts with the Supreme Court's interpretation in *Houston v. Lack*.[18] Even though federal courts of appeal deadlines for filing notices of appeal are jurisdictional, *Houston* holds that pro se prisoners are deemed to have filed timely when they have not actually filed, but have timely tendered their papers to prison officials. And, the last day is fine—they need not have given their papers to prison officials a few days before the filing deadline. The reason is that they "ha[ve] done all that could reasonably be expected" to file on time.[19] Substituting "aliens" for "prisoners" in *Houston*'s ratio decidendi suggests that *Houston* ought to be extended to aliens.

> Such [aliens] cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the [clerk] receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, [aliens] cannot personally travel to [Falls Church, VA] to see that the notice is stamped "filed" or to establish the date on which the [board] received the notice. . . . No matter how far in advance the [aliens] delivers his notice to [the mailing service], he can never be *sure* that it will ultimately get stamped "filed" on time.[20]

We extended *Houston* to aliens' appeals to the BIA in *Gonzalez-Julio v. INS*.[21] There we went so far as to hold that the then-ten day limit for filing notices of appeal denied due

---

[17]*Zhong Guang Sun*, 421 F.3d at 111.

[18]487 U.S. 266 (1988).

[19]*Id.* at 270.

[20]487 U.S. at 270-71 (emphasis in original).

[21]34 F.3d 820 (9th Cir. 1994).

process of law. The reason was that there were "two risks of delay which were not in the aliens control: delay in mail delivery and delay in filing after receipt by the Office."[22] Applying the principle enunciated by the Supreme Court in *Logan v. Zimmerman Brush Co.*[23] we held that the alien was entitled by the Due Process Clause to an opportunity to be heard on his appeal "at a meaningful time and in a meaningful manner."[24] In *Gonzales-Julio*, fifteen years ago, we noted that the BIA could obviate much of the problems reasonable accommodation could cause by allowing filing within a reasonable distance of the alien's residence instead of limiting it to Falls Church, Virginia. Now, fifteen years later, the government's justification for requiring physical filing in Falls Church has become technologically obsolete, and the practicality of enforcing a rigid filing date without arbitrariness much greater, because the Board could easily adopt electronic filing. There would be nothing wrong with a rigid filing deadline if it could be complied with from anywhere in this huge country by email. A rigid deadline is fundamentally unfair if people cannot assure their own compliance.

The BIA's answer to the application of the *Houston* "not within his control" justification for requiring acceptance of late filing is that the alien should "file as far in advance of the deadline as possible."[25] That answer is constitutionally unsatisfactory because a person with fundamental interests at stake is entitled to certainty about when he must ask to be heard in order to get a hearing. Nor is thirty days so long a time that a few days here or there should not matter to the alien. The alien owns the thirty days. He needs to know, for purposes of filing on time, exactly when they end.

---

[22] 34 F.3d at 823.

[23] 455 U.S. 422 (1982).

[24] *Gonzalez-Julio*, 34 F.3d at 823 (quoting *Logan*, 455 U.S. at 437).

[25] *Liadov*, 23 I. & N. Dec. at 992.

All of the thirty days are likely to be essential. Aliens' appeals are not, by and large, handled by giant spare-no-expense law firms, in which a partner can command a senior associate who can command a junior associate to have something on his desk by 9:00 A.M. Monday without fail, and whatever expenses are necessary to accomplish that will be borne. The record in Iriguyen-Briones describes the details of a typical case, and there is no reason to doubt that they are typical. The alien had lost his case before the IJ *pro se*, just before Christmas on December 18, and came to a lawyer's office right after New Year's, January 4. The lawyer could not do anything without listening to the Immigration Court's tapes (not yet transcribed, of course), and needed a retainer before investing the time to do so. The alien needed a few days to raise some money, came in with enough the following Monday, counsel got an appointment with the Immigration Court to listen to the tapes Thursday, and drove the 45 miles to the court. Counsel then researched the applicable law necessary to formulate the notice of appeal on that day and the next (Friday) and prepared the notice. Monday was Martin Luther King day, so counsel drove to the post office herself first thing in the morning Tuesday, and sent the papers express mail for guaranteed delivery Wednesday, which is when they were due. She did not drop the ball, the post office did, and as is common, all thirty days were reasonably necessary for the task (too short, actually—the tapes ran longer than the time the Immigration Court had for counsel to listen to them on Thursday before the next lawyer's appointment).

"The fundamental requisite of due process of law is the opportunity to be heard."[26] The interest at stake in immigration cases, as in many others, is very important. Though some are frivolous, some are an alien's only chance to avoid unjustified destruction of his family or even torture and death in some benighted country. Due process of law requires that the government refrain from destroying life, liberty, or property

---

[26]*Grannis v. Ordean*, 234 U.S. 385, 395 (1914)

with fundamentally unfair procedure. It does so if it denies a person an opportunity within his control to be heard. In these two cases, that is what it did. What is worse, the government's important interest in proceeding expeditiously with these cases and requiring compliance with reasonable time limits can easily be protected, without subjecting aliens to the risk of losing their appeals to bad weather or post office error. All it need do is what courts and private companies routinely do: allow people to email their notices of appeal. It is a cruel irony that the Board publishes the manual that lawyers are supposed to use as guidance on the internet, yet pretends the internet does not exist when it comes to receiving papers as opposed to distributing them.